IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| HEATHER RACHELLE KELLER, | § | |
| | § | |
| *Plaintiff,* | § | SA-20-CV-01171-ESC |
| | § | |
| vs. | § | |
| | § | |
| COMMISSIONER OF SOCIAL | § | |
| SECURITY, | § | |
| | § | |
| *Defendant.* | § | |

## ORDER

This order concerns Plaintiff's request for review of the administrative denial of his application for a period of disability and disability insurance benefits ("DIB") under Title II and an application for social security income ("SSI") under Title XVI. 42 U.S.C. §§ 405(g), 1383(c)(3). On October 4, 2021, the parties appeared through counsel before the Court for oral argument on the issues raised in this case. After considering Plaintiff's Opening Brief [#18], Defendant's Brief in Support of the Commissioner's Decision [#21], Plaintiff's Reply Brief [#22], the transcript ("Tr.") of the SSA proceedings [#11], the other pleadings on file, the applicable case authority and relevant statutory and regulatory provisions, the parties' oral arguments at the Court's hearing, and the entire record in this matter, the Court concludes that substantial evidence supports the Commissioner's decision finding Plaintiff not disabled and that no reversible legal error was committed during the proceedings. The Court will therefore affirm the Commissioner's decision.

## I.  Jurisdiction

This Court has jurisdiction to review a decision of the Social Security Administration pursuant to 42 U.S.C. § 405(g). The undersigned has authority to enter this Order pursuant to 28

U.S.C. § 636(c)(1), as all parties have consented to the jurisdiction of a United States Magistrate Judge [#6, #12, #13].

## II.  Legal Standards

In reviewing the denial of benefits, the Court is limited to a determination of whether the Commissioner, through the ALJ's decision,[1] applied the proper legal standards and whether the Commissioner's decision is supported by substantial evidence.  *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995); 42 U.S.C. §§ 405(g), 1383(c)(3).  "Substantial evidence is more than a scintilla, less than preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Villa v. Sullivan*, 895 F.2d 1019, 1021–22 (5th Cir. 1990) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).  The Court may not reweigh the evidence or substitute its judgment for that of the Commissioner.  *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000).  Conflicts in the evidence and credibility assessments are for the Commissioner, not the court, to resolve.  *Id.*  While substantial deference is afforded the Commissioner's factual findings, the Commissioner's legal conclusions, and claims of procedural error, are reviewed *de novo*.  *See Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

In determining if a claimant is disabled, the Commissioner uses a sequential, five-step approach, which considers whether: (1) the claimant is currently engaged in substantial gainful activity, (2) he has a severe impairment, (3) the impairment meets the severity of an impairment enumerated in the relevant regulations, (4) it prevents the claimant from performing past relevant work, and (5) it prevents him from doing any relevant work.  *Garcia v. Berryhill*, 880 F.3d 700,

---

[1] In this case, because the Appeals Council declined to review the ALJ's decision, the decision of the ALJ constitutes the final decision of the Commissioner, and the ALJ's factual findings and legal conclusions are imputed to the Commissioner.  *See Higginbotham v. Barnhart*, 405 F.3d 332, 336 (5th Cir. 2005); *Harris v. Apfel*, 209 F.3d 413, 414 (5th Cir. 2000).

704 (5th Cir. 2018).  If the claimant gets past the first four stages, then the burden shifts to the Commissioner on the fifth step to prove the claimant's employability.  *Id.*  A finding that a claimant is not disabled at any point in the five-step review is conclusive and terminates the analysis.  *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987); *see also* 20 C.F.R. § 404.1520(a)(4).

### III.  Factual Background

Plaintiff Heather Rachelle Keller filed her applications for SSI and DIB on October 22 and 23, 2018, respectively, alleging disability beginning September 2, 2017.  (Tr. 219–27.)  At the time of her applications, Plaintiff was a 31-year-old high school graduate with past relevant work as a restaurant server and housecleaner.  (Tr. 219, 251.)  The related medical conditions upon which Plaintiff based her initial DIB and SSI applications were fibromyalgia, neck problems, hand/wrist/arm problems, depression, anxiety disorder, stomach problems, headaches, asthma, heart problems, and acid reflux.  (Tr. 249.)  Plaintiff's applications were denied initially on May 15, 2019, and again upon reconsideration on August 8, 2019.  (Tr. 81–82, 117–18.)

Following the denial of her claim, Plaintiff requested an administrative hearing.  Plaintiff and her non-attorney representative, Angie Saltsman, attended the administrative hearing before Administrative Law Judge ("ALJ") Don Harper on March 13, 2020.  (Tr. 30–48.)  Plaintiff and vocational expert ("VE") Calvin Turner provided testimony at the hearing.  (*Id.*)

The ALJ issued an unfavorable decision on April 14, 2020.  (Tr. 12–23.)  The ALJ found that Plaintiff met the insured-status requirements of the SSA and applied the five-step sequential analysis required by SSA regulations.  At step one of the analysis, the ALJ found that Plaintiff has not engaged in substantial gainful activity since September 2, 2017, the alleged disability onset date.  (Tr. 14.)  At step two, the ALJ found Plaintiff to have the severe impairments of

degenerative disc disease, fibromyalgia, major depressive disorder, and generalized anxiety disorder.  (Tr. 15.)  At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal the severity of one of the listed impairments in the applicable Social Security regulations so as to render Plaintiff presumptively disabled.  (Tr. 15–17.)

Before reaching step four of the analysis, the ALJ found Plaintiff retained the residual functional capacity ("RFC") to perform light work except she can perform only indoor work; can only occasionally balance, stoop, kneel, and crouch; and can only occasionally interact with the public, coworkers, and supervisors.  (Tr. 17–21.)  At step four, the ALJ determined that Plaintiff is capable of performing her past relevant work as a housekeeper cleaner, as this work does not require the performance of any work-related activities precluded by Plaintiff's RFC.  (Tr. 22.) Accordingly, the ALJ determined that Plaintiff was not disabled for purposes of the Act, and therefore not entitled to receive DIB or SSI.  (Tr. 22–23.)

Plaintiff requested review of the ALJ's decision, but her request for review was denied by the Appeals Council on July 31, 2020.  (Tr. 1–6.)  On October 2, 2020, Plaintiff filed the instant case, seeking review of the administrative determination.

## IV.  Analysis

Plaintiff raises three points of error in this appeal, all of which challenge the ALJ's RFC determination.   An RFC determination is the most an individual can still do despite her limitations.  20 C.F.R. § 404.1545(a)(1).  In assessing a claimant's RFC, the ALJ must consider all the evidence in the record, including the limiting effects of all documented impairments, regardless of whether those impairments are severe or non-severe.  *Id.* at § 404.1545(a)(1)–(3). The relative weight given to the evidence contained in the record is within the ALJ's discretion. *Chambliss v. Massanari*, 269 F.3d 520, 523 & n.1 (5th Cir. 2001) (per curiam).  To that end, the

ALJ is not required to incorporate limitations in the RFC that he did not find to be supported in the record.  *See Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988) (per curiam).  Furthermore, "RFC determinations are inherently intertwined with matters of credibility, and the ALJ's credibility determinations are generally entitled to great deference."  *Acosta v. Astrue*, 865 F. Supp. 2d 767, 790 (W.D. Tex. 2012) (citing *Newton*, 209 F.3d at 459 (internal quotation omitted)).

Here, the ALJ assessed Plaintiff with the RFC to perform light work with additional limitations related to her physical and mental limitations.  Per the governing regulations, light work involves lifting of no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds and a good deal of walking or standing.  20 C.F.R. § 404.1567(b).  In light of Plaintiff's obesity, cervical degenerative disc disease, fibromyalgia, occasional right-hand weakness, and reduced range of motion of the cervical spine and tenderness, the ALJ imposed additional restrictions that Plaintiff may only occasionally balance, stoop, kneel, and crouch.  (Tr. 21.)  Due to Plaintiff's asthma, the ALJ limited Plaintiff to only indoor work.  (*Id.*)  In light of Plaintiff's generalized anxiety and major depressive disorders, the ALJ also imposed social restrictions, limiting Plaintiff to only occasional interaction with the public, coworkers, and supervisors.  (*Id.*)

Plaintiff argues there is not substantial evidence in the record to support the ALJ's assessment of the physical and mental health opinions of record or his discounting of Plaintiff's subjective complaints of disabling conditions.  Plaintiff's primary argument is that the ALJ erroneously rejected all medical opinions of record regarding the limitations caused by Plaintiff's physical and mental impairments and instead relied on his own lay assessment of the medical evidence.  Plaintiff further argues that the ALJ was required to further develop the record by

ordering an additional consultative opinion regarding Plaintiff's physical RFC, due to a scheduled spinal surgery that was not considered by any of the physicians of record. As to the ALJ's credibility assessment, Plaintiff argues he failed to consider all regulatory factors and instead erroneously focused solely on whether the objective medical evidence provided support for Plaintiff's testimony. None of these arguments has merit.

**A.      Plaintiff's physical RFC is supported by substantial evidence.**

Plaintiff's primary argument regarding the ALJ's physical RFC is that the ALJ should have further developed the record by ordering an additional consultative examination to assess the disabling effects of new medical evidence (the scheduled surgery) that was not considered by any medical providers of record. Although Plaintiff leads with this argument in her brief, she chose not to emphasize or develop the argument at the Court's hearing. The Court does not find this argument persuasive.

The new evidence at issue is a notation in records of Dr. Benjamin A. Hooker, Plaintiff's treating orthopedist, from October 2019 and February 2020 regarding a scheduled spinal surgery. (Tr. 730–36.) The last medical opinion of record regarding Plaintiff's functional limitations based on her alleged disability is the State Agency Medical Consultant (SAMC) opinion at the reconsideration level in August 2019, before Dr. Hooker created his most recent treatment records. (Tr. 94–95, 111–12.) Dr. Hooker's notes document that Plaintiff continues to experience progressive neck and low back pain, as well as bilateral grip weakness and right-hand numbness, due to disc degeneration of her cervical spine. (Tr. 730.) Dr. Hooker further notes that Plaintiff has not responded to more conservative treatment and was awaiting an anterior cervical discectomy and fusion ("ACDF") surgery to be performed by her neurologist Dr. Robert Johnson in the summer of 2020. (Tr. 732, 734.) There is no additional evidence in the record

regarding this surgery, including whether or not it ultimately occurred or was successful at treating Plaintiff's symptoms.

The ALJ did not have a duty to further develop the record based on these notations and this additional medical evidence.  Plaintiff, as claimant, bears the burden of proving her disability by establishing physical or mental impairment.  *Jones v. Bowen*, 829 F.2d 524, 526 (5th Cir. 1987).  "Under the applicable regulations, if sufficient medical or other evidence is not provided by the claimant, the secretary is required to make a decision based on the information available."  *Id.* (citing 20 C.F.R. § 404.1516).  "Under some circumstances, however, a consultative examination is required to develop a full and fair record."  *Id.* (citing 20 C.F.R. § 404.1517).  Ultimately, the decision to require an examination—at the government's expense— is, however, a discretionary one.  *Id.*

The duty to develop the facts fully and fairly related to a claimant's application arises only when such an evaluation is "necessary" to enable the ALJ to make the disability determination.  *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996).  "A consultative examination becomes 'necessary' only when the claimant presents evidence sufficient to raise a suspicion concerning [the claimed] impairment."  *Id.* (citation omitted).  The relevant regulation lists four situations that may require a consultative examination: (1) where additional evidence needed is not contained in the medical records; (2) where evidence that may have been available from treating or other medical sources cannot be obtained for reasons beyond a claimant's control, such as death or noncooperation of a medical source; (3) where highly technical or specialized medical evidence is not available from claimant's treating or other medical sources; or (4) where there is an indication of a change in claimant's condition that is likely to affect her ability to work.  20 C.F.R. §§ 404.1519a(b), 416.919a(b).  Dr. Hooker's October 2019 and February 2020

notations regarding Plaintiff's intended spinal surgery do not implicate any of these factors or constitute such evidence.

The medical records document Plaintiff's chronic neck and back pain from the summer of 2018, when she first complained of neck pain to Dr. Clay Gruesbeck, her primary care physician, and continuing throughout the relevant period.  (Tr. 516–25.)  Dr. Hooker began treating Plaintiff for neck, back, and arm pain beginning in September 2018, and his records contain an MRI depicting cervical disc herniation at C5/6 and multilevel disc degeneration of the cervical spine.  (Tr. 531–44.)  Additionally, Plaintiff saw Dr. Johnson in November 2018 to address muscle spasms in the neck and persistent headaches, and he recommended physical therapy to address what he deemed to be a small cervical disc herniation at C5/6.  (Tr. 560–61.)  Throughout the relevant period, surgery was discussed as a possible treatment option for Plaintiff, but due to fears regarding possible complications, Plaintiff chose to begin with more conservative treatments like physical therapy.  (Tr. 667.)  Dr. Hooker's records noting Plaintiff's scheduled spinal fusion surgery (with another doctor) do not document a worsening of symptoms associated with her physical impairments, only that Plaintiff was electing to pursue a different approach to treatment.  The ALJ was not required to further develop the record based on this minimal evidence.

Nor is there any merit to Plaintiff's argument that the ALJ erred in rejecting all medical opinions of record or that he improperly undertook his own lay assessment of the medical evidence.  The ALJ has the sole responsibility to determine a claimant's RFC and is tasked with interpreting the medical evidence to determine a claimant's capacity for work.  *Taylor v. Astrue*, 706 F.3d 600, 602–03 (5th Cir. 2012).  An ALJ is not required to endorse a medical opinion of record in fashioning the RFC and is free to adopt in part or reject in full any opinion he finds not

to be supported by or consistent with the medical evidence.  *See Fontenot v. Colvin*, 661 Fed. App'x 274, 277 (5th Cir. 2016) ("[T]he ALJ is entitled to determine the credibility of medical experts as well as lay witnesses and to weigh their opinions and testimony accordingly.") (quoting *Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir. 1990)).  The fact that the ALJ found the medical opinions of record unpersuasive does not constitute reversible error, unless the ALJ applied the incorrect legal standard in evaluating the evidence or there is not substantial evidence to support the ALJ's ultimate resolution of that evidence.  Neither occurred here.

In addition to treatment records regarding Plaintiff's neck condition, there are three medical opinions addressing Plaintiff's physical limitations in the record: the consultative examination of Dr. Thomas Pfeil from April 2019 and the opinions of the SAMCs at the initial and reconsideration levels from May 2019 and August 2019, respectively.  (Tr. 611–13, 58–60, 74–76, 94–95, 111–12.)  Dr. Pfeil's examination found that Plaintiff presented with normal capabilities in some regards and limitations in others; he documented her normal gait, full grip strength in both extremities, normal deep tendon reflexes, and normal ability to handle small objects but also her inability to bend and squat due to tenderness and decreased range of motion in her spine, as well as decreased sensation in her arms.  (Tr. 611–13.)  Dr. Pfeil ultimately concluded that Plaintiff was unable to lift or carry more than 5 pounds and was limited in her ability to engage in repeated grasping and squeezing movements due to right hand pain.  (*Id.*)  In contrast, the SAMCs at both the initial and reconsideration levels found Plaintiff could frequently carry objects weighing up to 10 pounds and occasionally carry objects of 20 pounds— the equivalent of light work.  (Tr. 58–60, 74–75, 94–95, 111–12.)

In evaluating the persuasiveness of these opinions, the ALJ correctly employed the new rule governing RFC determinations for claims filed on or after March 27, 2017.  *See* 20 C.F.R. §

404.1520c.  The new rule states that the Commissioner is no longer required to defer or give any specific evidentiary weight, including controlling weight, to any medical opinion or prior administrative medical finding.  *Id.* at § 404.1520c(a).  Instead, the Commissioner is to consider all medical opinions and prior administrative medical findings using the same specific factors outlined in the rule, the most important of which are supportability and consistency.  *Id.* at § 404.1520c(b)(2).  The ALJ rejected aspects of all three of the opinions, finding certain conclusions of the providers unpersuasive because they lacked consistency with the providers' own observations (in the case of Dr. Pfeil) or other evidence of record and did not have adequate support from the record as a whole.  (Tr. 20.)  Importantly, however, the ALJ did not disregard all aspects of these opinions in fashioning his RFC.  To the contrary, his physical RFC is consistent with the SAMCs' findings that Plaintiff is capable of light work.  The ALJ rejected the SAMCs' opinions not because he believed Plaintiff capable of doing more, but because the SAMCs failed to assess any environmental limitations even though Plaintiff suffers from asthma.  (*Id.*)  The ALJ imposed an additional limitation, limiting Plaintiff to indoor work, but otherwise adopted the majority of the SAMCs' findings.  (Tr. 17.)

Moreover, the record as a whole provides substantial evidence for the ALJ's assessment that Plaintiff can engage in modified light work.  Dr. Johnson documented in November 2018 Plaintiff's ability to walk without an assistive device, her excellent range of motion in her neck, her ability to raise her arms above her shoulders with no pain, and her "unremarkable xrays." (Tr. 560–61.)  And Dr. Johnson interpreted Plaintiff's MRI as depicting only a "small disc herniation."  (*Id.*)  The outcome of Dr. Pfeil's examination in April 2019, as noted *supra*, was also "normal" in several regards, including grip strength in all extremities, which the ALJ concluded was inconsistent with his opinion of Plaintiff's ability to lift only five pounds and

10

Plaintiff's hearing testimony that she could lift up to 15 pounds.[2]  (Tr. 611–13, Tr. 20.)  And Dr. Hooker's treatment notes consistently document that Plaintiff presented with a normal gait and station and presented with no evidence of nerve compression or dysfunction when an electromyogram was performed.  (Tr. 532, 536, 540)  Plaintiff also consistently tested negative for Hoffman's and Phalen's tests, which are used for assessing motor neuron function and wrist flexion.  (*Id.*)  Finally, the ALJ cited Plaintiff's normal physical examinations throughout the treatment period, which demonstrate a normal range of motion in the back and musculoskeletal system, normal strength and sensation, intact cranial nerves, normal station and gait, and negative straight leg raise tests.  (Tr. 18.)  In summary, substantial evidence supports the ALJ's physical RFC of modified light work.

**B.    Plaintiff's mental RFC is supported by substantial evidence.**

Substantial evidence also supports the ALJ's assessment of Plaintiff's mental RFC.  As previously noted, based on Plaintiff's severe impairments of major depressive disorder and generalized anxiety disorder, the ALJ limited Plaintiff to only occasional interaction with the public, coworkers, and supervisors.  The ALJ did not impose any additional mental limitations on Plaintiff's capacity for work and concluded that the limitation he did impose did not preclude her past relevant work as a housekeeper cleaner.  (Tr. 22.)  Plaintiff argues that the mental RFC should have been further limited based on the opinion of Dr. Paul McCollum, the psychologist who conducted a mental status examination on February 21, 2019.  (Tr. 567–72.)

---

[2]  Plaintiff argues that the ALJ misrepresented Plaintiff's hearing testimony in noting that Plaintiff admitted at the hearing she can lift up to 15 pounds, when Plaintiff actually testified that she only sometimes can manage a gallon of milk (which weighs about 8 pounds), cannot lift her son, and "can't lift maybe more than 10, 15 pounds."  (Tr. 43.)  The undersigned does not find the ALJ's assessment of Plaintiff's testimony to be erroneous, and the Court agrees that Plaintiff's testimony contradicts Dr. Pfeil's limitation of Plaintiff to lifting only five pounds.

Dr. McCollum found that Plaintiff can understand and remember one-to-two step but not complex instructions, can sustain concentration but not at a reasonable pace, can handle only minimal pressures in a competitive work setting, and needs support from others in order to interact socially with supervisors, coworkers, and the public. (Tr. 572.) The ALJ found Dr. McCollum's opinion unpersuasive on the basis that it was both inconsistent with the totality of Dr. McCollum's own observations and unsupported by any articulated rationale. (Tr. 20–21.) This finding is not reversible error.

In choosing not to adopt Dr. McCollum's opinion in full, the ALJ discussed the primary factors of supportability and consistency in accordance with the governing regulations. *See* 20 C.F.R. § 404.1520c(b)(2). And substantial evidence supports the ALJ's conclusion. Upon examination, Dr. McCollum found Plaintiff able to spell the word "world" both forward and back with good concentration and focus and that Plaintiff exhibited overall good thought processing. (Tr. 570–71.) Additionally, Dr. McCollum found Plaintiff to only have "mild problems" with attention span, and found Plaintiff to have an average short-term memory, adequate remote memory, and average overall intellectual functioning. (Tr. 570–71.) The ALJ cited specifically to some of these findings in weighing the persuasiveness of Dr. McCollum's ultimate opinion that Plaintiff was much more limited in her mental functioning.

The Court disagrees with Plaintiff's contention that the ALJ was required to discuss the other factors found in the regulation, such as Dr. McCollum's treatment relationship with the claimant, his area of specialization, and his familiarity with other evidence in the medical record. *See* 20 C.F.R. § 404.1520c(c)(3)–(5). In support of this argument, Plaintiff cites to the regulation addressing treatment of "equally persuasive medical opinions." *Id.* at § 404.1520c(b)(3). The regulation at issue states as follows:

> When we find that two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same, we will articulate how we considered the other most persuasive factors in paragraphs (c)(3) through (c)(5) . . .

*Id.* Plaintiff contends that because the ALJ found the opinions of Dr. McCollum and the SAMCs on Plaintiff's mental RFC all to be unpersuasive, this rule applies and the ALJ's failure to discuss other factors is reversible error.

This argument misreads the regulation, which by its own terms is only triggered where the ALJ himself finds that two or more opinions are in equipoise. The ALJ made no such written finding here. He merely found multiple opinions unpersuasive for different reasons. The ALJ found Dr. McCollum's opinion to be too restrictive in his assessment of Plaintiff's ability to work and the SAMCs' opinions to be not restrictive enough because they did not include any social limitations despite Plaintiff's documented depressed and tearful mood throughout her mental health records. (Tr. 20.) The ALJ was not required to expressly discuss the additional regulatory factors.

Finally, the ALJ's overall mental RFC is supported by substantial evidence. Throughout Plaintiff's medical and mental health records, she displayed intact memory, good concentration, appropriate thought content, normal judgment, and an ability to interact with others. (Tr. 517, 532, 540, 554, 581, 582, 595, 639, 642, 653, 656, 660, 664, 667, 676, 683, 695.) Plaintiff also represented to various providers and testified at the hearing before the ALJ that she was able to take a bus, do housework, shop without difficulty, prepare meals, walk her son to school, and take him for playdates. (Tr. 39, 43, 274, 276, 284, 569.) The ALJ's mental RFC is supported by substantial evidence.

**C.**   **The ALJ's evaluation of Plaintiff's symptoms is supported by substantial evidence.**

Finally, the Court also rejects Plaintiff's third point of error—that the ALJ's assessment of Plaintiff's symptoms is unsupported by substantial evidence.  Plaintiff argues that the ALJ erred in placing too much emphasis on the objective medical evidence in evaluating whether Plaintiff's subjective complaints could reasonably be expected to produce her claimed pain and other symptoms and should have instead considered various other factors in evaluating Plaintiff's credibility.  In evaluating Plaintiff's symptoms, the ALJ must consider the objective medical evidence, as well as other factors, including: (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and (7) any factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.  *See* 20 C.F.R. § 404.1529(c)(3).  The ALJ explicitly discussed some of these factors in his opinion in making the determination as to the extent of Plaintiff's impairments, namely Plaintiff's daily activities, such as her ability to cook, clean, use a bus, and at times maintain personal hygiene, finding these activities contradicted Plaintiff's claim of extreme limitations.  (Tr. 21.)

Insofar as the ALJ failed to discuss some of these factors, this was not reversible error.  The evaluation of a claimant's subjective symptoms "is a task particularly within the province of the ALJ who has had an opportunity to observe whether the person seems to be disabled." *Harrell v. Bowen*, 862 F.2d 471, 480 (5th Cir. 1988) (internal quotation omitted).  "The ALJ is

not required to mechanically follow every guiding regulatory factor in articulating reason for denying claims or weighing credibility." *Clary v. Barnhart*, 214 Fed. App'x 479, 482 (5th Cir. 2007).  In denying benefits, the ALJ here considered the medical evidence under the governing regulations and considered Plaintiff's testimony and description of her symptoms in determining that her claimed impairments allowed her to perform work at the light exertional level, with certain modifications.

In summary, because there is substantial evidence to support the ALJ's RFC determination, and the ALJ did not commit any reversible legal error in making his RFC determination, the Commissioner's decision that Plaintiff is not disabled should be affirmed.

## V.  Conclusion

Based on the foregoing, the Court finds that no reversible error was committed during these proceedings and substantial evidence supports the Commissioner's finding that Plaintiff is not disabled.  Accordingly,

**IT IS HEREBY ORDERED** that the Commissioner's decision finding that Plaintiff is not disabled is **AFFIRMED**.

**IT IS SO ORDERED.**

SIGNED this 8th day of October, 2021.

ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE